IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | IN PROCEEDINGS UNDER CHAPTER 11 |
| SUMMIT METALS, INC., | CASE NO. 98-2870 |
| | JUDGE RANDOLPH BAXTER |
| Debtor. | |

### MEMORANDUM OF OPINION AND ORDER

The matter before the Court is a motion of the Chapter 11 Trustee for authority to consent to sale of all or substantially all of the assets of the debtor's subsidiary Rivco Millwork Co., Inc. (hereinafter RIVCO). The Court held a hearing in this matter on October 12, 2005 upon due notice and adjourned the matter to this date for a ruling. The following constitutes the Court's factual findings and conclusions of law:

The adduced testimony revealed that the Trustee marketed the subject property throughout the duration of his appointment as case trustee. He was appointed in September of 2004. It is unrefuted that throughout the marketing period the only written offer received by the Trustee for the subject non-debtor assets that would generate a dividend for the Debtors' bankruptcy estate was the offer made by RHC for a total consideration of $11, 990, 500, which includes $1.2 million in cash, and assumption of certain debt, and other consideration. The RHC offer is, undisputedly, a firm financial commitment. RHC's written offer is unconditional and was made on September 19, 2005.

An objection was made by Ambrose M. Richardson ("A.M. Richardson) to the Trustee's motion to approve the sale. He asserts that RHC's offer is not the lowest and best offer and is not in the best interest of the Debtor's estate. The testimony of A.M. Richardson acknowledges

that he possesses conflicting roles of interest. Not only has he made an initial oral offer for the assets of non-debtor RIVCO, he also serves as chairman of the Official Committee of Unsecured Creditors. As an offeror, he concedes that he seeks to acquire the subject assets at the lowest possible price. On the other hand, as committee chairman, he seeks to maximize any return to the Debtor's estate for the benefit of the general unsecured claimants. He further acknowledged that he had not made a written offer for the assets in question as of the hearing date, but that his offer would exceed the highest offer by some $300,000, if favorably considered.

As an oral offer made at the time of his testimony, the Richardson offer was unwritten and possessed no firm financial commitment. This was unrefuted. During the recess in the hearing on the Trustee's motion, Richardson obtained a letter of intent (LOI) from a lender which, purportedly, would support an enhanced offer for the purchase of the subject assets. The LOI was shown to various parties including the Trustee and the Court. In response, the Trustee rejected the enhanced offer of Richardson. Acknowledging that the improved offer was an amount $400,000 greater than the RHC offer, the Trustee rejected the LOI offer as it was conditional and required a period of due diligence. An examination of the LOI shows that it is a conditional offer, as opposed to a firm and unconditional commitment to purchase the RIVCO assets. See, LOI. Specifically, the LOI provides in ¶ 11:

> The closing of the proposed purchase of assets is conditional on the following:
>
> > a. the absence of any material adverse changes in the title or condition of the assets or the operations of RIVCO;
> > b. the absence of any transactions outside the ordinary course of business, including any changes in compensations levels, any dividends or distributions, or any management or similar fees;
> > c. the obtaining of all necessary consents or releases from third parties, including the IRS, and all necessary corporate approvals;

2

d. the absence of any injunction or decree prohibiting the contemplated transaction;
e. the entry of an order in the form acceptable to Chariot by Delaware Bankruptcy Court;
f. Chariot shall be given all reasonable access to the books and records of RIVCO, including all contracts and agreements with suppliers, representatives and vendors, and access to its accountants and other professional advisers, and all tax filings;
g. the execution of a definitive asset purchase agreement not later than November 7, 2005.

**The foregoing expression of intention should be considered preliminary and non-binding.** (See Chariot Recovery Inc. LOI, dated October 12, 2005)(Emphasis added).

Considering (1) the lengthy marketing period undertaken by the Trustee which produced the RHC offer; (2) the firm and unconditional financial commitment of RHC to acquire the RIVCO assets; (3) the conditional offer of A.M. Richardson; (4) the upcoming termination of a forebearance agreement between C.I.T. Group and the Debtor (i.e. RIVCO), the Trustee prudently chooses to accept a proverbial "bird in hand" offer rather than a conditional offer of recent submission (the Richardson offer).

It is noted that Richardson was aware of the Debtor's bankruptcy filing as early as the petition filing date. He further acknowledged some awareness of the RIVCO assets prepetition. For whatever reasons, Richardson made no formal written offer to acquire the RIVCO assets until the end of the hearing on October 12, 2005, on the Trustee's motion to approve the asset sale to RHC. His LOI, *inter alia*, requested a period of due diligence.

The RHC Offer

The RHC offer, as of the hearing date, was the only written offer with firm financial commitment received by the Trustee for the subject assets. The offer was based upon an

3

EBIDTA of $1.4 million, as obtained from a trailing twelve month operating experience. To formulate the offered price, the investment banker used a multiple of 6.77 times the EBIDTA, although it was stated that a multiple of 5 times EBIDTA would have been a reasonable offer. In view of the industry standard, based upon the nature and magnitude of the assets being sold, an EBIDTA multiple of 6.77 was used herein. (Testimony, Victor).

No corresponding valuative data was adduced by either objecting party to counter the investment banker's valuation analysis. One objectant, A.M. Richardson, offered personal testimony, purportedly to show that a different EBIDTA multiple should have been used by RHC. His testimony was conclusory and without substantiation. His written objection provided no substantion as well. He further conceded that he did not possess investment banking experience comparable to that of Mr. Victor, the Trustee's retained investment banker.

An objection was also filed by Richard Gray. Gray, however, does not object to the proposed sale. Gray's motion indicates that he "does not oppose the basic terms of the proposed sale, and believes that the sale itself should be consummated as rapidly as possible." At the hearing he appeared telephonically and acknowledged that he was opposed to certain language which was contained in a circulating proposed order relative to this matter. Thus, the objection is without merit at this juncture, as the Court has not considered for approval any proposed entry.

The burden of proof in such contested matters is upon the moving party who seeks approval of the proposed sale. That burden must be borne by a preponderance of the evidence standard. *See e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147 (D. Del. 1999). Although a proponent of a sale bears the ultimate burden of persuasion when there is an objection, the objecting party is required to prove some evidence respecting his objection. *See In*

4

*re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). Herein, that burden is upon the Trustee, who has met his burden. The testimony of the investment banker, Mr. Victor, was persuasive and uncontroverted by any persuasive corresponding evidence. His testimony revealed, in part that:

- The only other asset which conceivably could generate a dividend to creditors of the Debtors' estate is a $40 million judgment against Richard Gray, which to date, no money has been collected.
- Debtor has been operating under a technical default ever since the IRS lien attached to the estate.
- CIT desires to be released from its lending credit commitment.
- He told Richardson that if he was interested in purchasing the RIVCO assets, that he needed to take action.
- 2001-2003 Audited financials were given immediately to Richardson when asked and the 2004 audited financials were given as soon as they were in his possession, approximately two months ago.

Moreover, the Third Circuit has approved sales of non-debtor subsidiaries, and this Court has jurisdiction over the Purchased Assets. In *Pittsburgh Food and Beverage, Inc. v. Ranallo, et. al.*, 112 F.3d 645, 650 (3rd Cir. 1997), the Third Circuit held that a bankruptcy court has jurisdiction over the assets of a wholly owned non-debtor subsidiary sufficient to authorize the sale of those assets pursuant to Section 363(b) and to grant the buyer of those assets the protections granted by Section 363(m). Accordingly, this Court has jurisdiction over the Sale Transaction. *See also In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992)(Approval of subsidiary corporation's sale of its assets before confirmation of Chapter 11 plan pursuant to 363(b), was not abuse of discretion; with over 90% of subsidiary's debt owed on Pension Benefit Guaranty Corporation's claim against sister corporation, unified global reorganization plan was appropriate, good business reason existed for sale, terms of sale were fair and proceeds were placed in escrow pending distribution pursuant to future reorganization plan.)

Herein, Debtor's exercise of its shareholder power to approve the Sale reflects sound business judgment. The Debtor does not conduct any business operations. Its only marketable assets consist of its 92% stock interest in each of Rivco and Jenkins, its two operating subsidiaries. In order to maximize distributions to its creditors, the assets of RIVCO (and Jenkins) must be sold as efficiently as possible. As such, the Sale represents a prudent and favorable opportunity to improve Debtor's liquidity and maximize the potential for creditor recoveries. Thusly, the Debtor, through the Chapter 11 Trustee, should be authorized to exercise its majority shareholder power in RIVCO to approve the Sale.

Lastly, the Trustee's motion to waive the 10 day stay will be denied because it is unsupported by authority other than the citation to Rule 6004(g). The Trustee provided no evidence or testimony at the hearing to support this request.

Accordingly, the Trustee's motion to sale certain non-debtor assets is hereby approved. The objections are hereby overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.

Dated this 24th day of
October, 2005

JUDGE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT