## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 Case No. 98-2870 |
| ) | |
| SUMMIT METALS, INC. ) | Related Docket Nos. 557, 558, 559 |
| ) | |
| Debtor, ) | |
| ) | |
| AMBROSE M. RICHARDSON, III, ) | |
| ) | |
| Appellant, ) | Appeal No. 1:05-cv-876 (KAJ) |
| ) | |
| v. ) | Related Docket Nos. 5, 6 |
| ) | |
| FRANCIS A. MONACO, JR., TRUSTEE, ) | |
| et al., ) | |
| ) | |
| Appellees. ) | |

## APPELLANT'S RESPONSE IN OPPOSITION TO FRANCIS A. MONACO, JR., CHAPTER 11 TRUSTEE'S MOTION TO DISMISS APPEAL

Appellant Ambrose M. Richardson, III ("Appellant"), by and through the undersigned counsel, submits this response in opposition to *Francis A. Monaco, Jr., Chapter 11 Trustee's Motion to Dismiss the Appeal* (the "Motion") in the above-captioned matter. For the reasons set forth herein, the Appellant respectfully requests that the Motion be denied.

## BACKGROUND

1.      On November 18, 2004, the Bankruptcy Court appointed Francis A. Monaco, Jr. as chapter 11 Trustee (the "Appellee") in this case (docket no. 374), effective *nunc pro tunc* to September 13, 2004.

2.      On October 27, 2004, the Appellee obtained an order approving the appointment of SSG as investment banker and financial advisor for the Appellee (docket no. 355).

3.      In January 2005, SSG issued confidential information memorandums regarding among other things two assets of the Debtor – Rivco and Jenkins.

4.      On March 10, 2005, Rivco's 2004 audited statements became available to Rivco insiders.  A dispute arose between the Internal Revenue Service ("IRS") and the Debtor regarding alleged outstanding tax liens.

5.      On May 17, 2005, the Appellee obtained approval of a settlement agreement with the IRS for release of the alleged liens (see docket no. 463).

6.      In July 2005, Appellant was in discussion with the Appellee regarding a proposed plan of reorganization that included Appellant's offer to purchase two of the Debtor's assets – Rivco and Jenkins.  Appellant received no response from the Appellee regarding the offer and follow-up correspondence.  Instead, on August 15, 2005, the Appellee sent discovery requests to the Appellant and an associated group of investors known as The Chariot Group ("Chariot"), including interrogatories, request for the production of documents, and request for admissions.

7.      On August 30, 2005, Chariot sent a draft letter of intent to the Appellee regarding the purchase of Rivco and Jenkins.

8.      On September 1, 2005, the Appellee informed Appellant for the first time that it required a firm financing commitment from the bank regarding the proposed purchase.  On that same day, Appellant was given Rivco's audited financial statements.

These audited financial statements were dated March 10, 2005. No explanation was given as to why the Appellee waited nearly six months to deliver the audited financials.

9.      On September 19, 2005, Appellant and Chariot submitted a letter of intent to purchase both assets – Rivco and Jenkins. On or about that same day, the Appellee signed an agreement with Rivco insiders ("RHC") to sell Rivco only. At that time, RHC did not yet have a firm financing commitment, which the Appellant requested from Chariot. Also on September 19, 2005, the Appellee filed a motion to approve the sale of Rivco to RHC without any type of competitive bidding procedures in place.

10.     On October 12 and 18, 2005, the court held a hearing on the Appellee's sale approval motion.

11.     On October 25, 2005, the court granted the Appellee's motion and rendered a decision and order authorizing the sale of Rivco to RHC ("Sale Order"). It is this Sale Order from which the Appellant appealed.

12.     On November 3, 2005, pursuant to court rules the Appellant filed a *Notice of Appeal* ("Appeal," at D.I. 542) and *Motion to Stay Order Approving* [Appellee's] *Motion to Sale* [sic] *Certain Non-Debtor Assets and Overruling Objections* ("Stay Motion," at D.I. 543).

13.     At the time of filing the Appeal, Appellant repeatedly sought a hearing date for the Stay Motion but received no response or a date from the court for several weeks thereafter. *See Affidavit of Dawn Abernathy* at D.I. 571. At that time, no further omnibus hearing dates were available for the Stay Motion.

14.    On or about December 13, 2005, the court gave January 25, 2006 at 11:30 am as the next available hearing date for the Stay Motion. The Appellant promptly filed a Notice of Hearing for said date and time and served the Notice on all relevant parties.

15.    On or about December 22, 2005, the involvement of visiting Judge Randolph Baxter was terminated. Judge Kevin J. Carey was designated to replace Judge Baxter. At or about that time, the court informed the Appellant that the hearing for the Stay Motion would be moved from January 25 to February 10, 2006, at 1:30 pm.

## LEGAL ARGUMENT

The Appellee seeks a dismissal of the Appeal and argues that the Appeal is statutorily and equitably moot. As to the Appellee's argument that the Appeal is statutorily moot, the Appellee claims that a reversal or modification of an order authorizing a §363(b) sale cannot impact the validity of the underlying sale transaction if the buyer purchased the assets in "good faith." However, the purchasers cannot be said to have purchased Rivco in "good faith" for the simple reason that the court did not make a "good faith" finding in the decision now subject to the present Appeal. Therefore, the closing of the sale was in fact subject to the present Appeal.

The Appellee incorrectly stated that the Sale Order "clearly established that RHC purchased the assets in 'good faith' . . . ." Appellee's *Memorandum of Law In Support of Appellee's Francis A. Monaco, Jr., Chapter 11 Trustee's Motion to Dismiss Appeal As Moot*, at 2. Notably, the Sale Order omitted any reference to a finding of "good faith" in the underlying sale. This reason alone provides ample justification for reversing the Sale Order and remanding the same for further review.

Second, the Appellee argues that the Appeal should be dismissed as moot on the

4

grounds of equitable mootness because the Appellant did not obtain an order staying the effectiveness of the Sale Order before the expiration of the ten-days thereafter. It should be noted that the Appellee simply has recharacterized its statutory argument for a dismissal of the Appeal as an equitable one. The Appellee did not give a single equitable basis for dismissing the Appeal. On the contrary, the equities lie in favor of the Appellant. A party cannot control the timing of when a court will hear a stay motion or when the court will give such a movant a hearing date so that the same could be noticed to all relevant parties. Further, it would simply be unjust to foreclose the Appellant's right to appeal for failing to obtain a stay order within the ten-day appeal period when the timing of setting a hearing on a stay motion is solely within the discretion of the court and the court does not respond or act within the ten-day period. Lastly, the Appellee would have this Court believe that in all cases a stay of a §363(b) sale order must be obtained prior to the expiration of the ten-day appeal period. The policy behind the ten-day appeal period is to give an appellant time to decide whether to file an appeal and research what bases, if any, such appellant may have for taking an appeal. By forcing an appellant to obtain a stay of such sale order, the ten-day appeal period would necessarily be truncated, thereby giving a prospective appellant less than the full ten days to decide whether to take an appeal. Such a requirement would work a hardship on all such appellants and would therefore be inequitable.

A.    **The Appeal Is Not Statutorily Moot**

The Court should deny the Appellee's Motion since the Appeal is not statutorily moot. Section 363(m) of the Bankruptcy Code states as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity

> knew of the pendency of the appeal, unless such authorization and such sale
> or lease were stayed pending appeal.

11 U.S.C. 363(m).

Typically, a purchaser's knowledge is a factor, and often a critical factor, in making a "good faith" finding. Since Congress specifically distinguished knowledge of the pendency of the appeal from "good faith" purchase, §363(m) can only be interpreted to mean that the underlying transaction itself must be done in good faith and the court (here, the Bankruptcy Court) must unequivocally make such a finding, which it did not. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings."). "[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), *it is required* to make a finding with respect to the 'good faith' of the purchaser." *Id.* at 149-50 (emphasis added). Without such a "good faith" finding, the purchaser cannot take advantage of §363(m) to rebut the present Appeal.

The Appellee concludes that language in the Appellee's Sale Motion and references to the "good faith" at the hearing is sufficient to extend the "good faith" purchaser protections of §363(m). However, *the Appellee does not and cannot argue with the fact that the Bankruptcy Court failed to make a "good faith" finding in its decision authorizing the sale.* The integrity of the underlying sale process was the key issue in Appellant's objection to the authorization of the sale of Rivco.

Further, this Court previously noted that merely uttering the words "good faith" does not necessarily constitute a true finding of fact. *See* Transcript of *MHR Capital Partners LP, et al.* v. *Blake of Chicago, Corp., et al.*, at 24 (May 25, 2005)(Jordan, D.C.J.)(D.I. 6, Exh. "A"). The present matter is clearly distinguishable from the situation presented in *MHR*

*Capital*. In *MHR Capital*, the bankruptcy court complied with the *Abbotts Dairies* requirement of making a finding of "good faith." On review this Court granted the appellee's motion to dismiss the appeal as moot, and cited the bankruptcy court's finding of "good faith" as part of the basis for granting the appellee's motion to dismiss the appeal as moot. Put simply, in the present matter there was no finding of "good faith."

The Appellee also argues that merely filing the Motion to Stay at or about the same time as the Notice of Appeal, the purchaser can still be considered a "good faith" purchaser under §363(m). Even assuming the Bankruptcy Court had made a finding of "good faith," the knowledge of the Appellant's Motion to Stay filed at the same time as the Notice of Appeal placed the purchaser on sufficient notice to eliminate the protections afforded "good faith" purchasers under §363(m). All of the grounds upon which the Appellant seeks to appeal the Sale Order were set forth in the Motion to Stay, which was filed at the same time as the Notice of Appeal.

Section 363(m) speaks to the purchaser's knowledge of the *pendency of the Appeal*, and is silent as to the purchaser's knowledge of the filing of a Motion to Stay. Had Congress intended that knowledge of the filing of a Motion to Stay was similarly irrelevant to a finding of "good faith" under §363(m) Congress could have included such language in the statute. This Court in *MHR Capital* also noted the appellant's failure to seek a stay as a factor in granting the appellee's motion to dismiss the appeal as moot. *See MHR Capital* Transcript at 43. In contrast to the appellant in *MHR Capital*, the Appellant here sought a stay of the Sale Order through its timely filed Motion to Stay, and set forth the bases of the Appeal in the Motion to Stay. Thus, Rivco's purchaser cannot be said to have closed on the sale without knowledge not only of the Appeal but also of the specific bases of the Appeal.

**B.     The Appeal Is Not Equitably Moot**

Mindful of the maxim that "equity follows the law," this Court need not determine whether the Appeal is equitably moot. Nonetheless, the equitable considerations lie in favor of the Appellant, not the Appellee. "Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable." *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996). The Third Circuit noted that this doctrine should be limited in scope and cautiously applied to "prevent *substantial harm to numerous parties*." *See In re Continental Airlines*, 203 F.3d 203, 209 (3d Cir. 2000)(emphasis added). Here, the only harm that could flow from granting the present Appeal is to RHC, Rivco's purchase. RHC chose to close on the sale of Rivco with notice of the present Appeal and Motion to Stay. RHC therefore chose to close on the purchase of Rivco with the knowledge that the Sale Order could be reversed. No other parties would be harmed by granting the Appeal. In fact, if the Appeal is granted and the Appellee elects to take advantage of the Appellant's offer to purchase Rivco, the estate (and consequently the estate's several creditors) will realize an additional $400,000.00, which represents the difference between RHC's offer to purchase Rivco and the Appellant's offer.

Courts have identified several factors with respect to equitable mootness. Those factors include whether the plan has been substantially consummated or stayed, whether the requested relief would affect the rights of other parties, whether the requested relief would affect the success of the plan, and the public policy of affording finality to bankruptcy judgments. *See Continental*, 91 F.3d at 560. It should be noted that these factors are prudential and do not necessarily include all relevant factors that a court may use to evaluate

whether an appeal should be dismissed on equitable mootness grounds.

Here, one of the debtor's few remaining assets is the Rivco property. The disposition of this asset is what is at stake in the Appeal. If the Appeal is dismissed, the estate stands to lose the opportunity to increase the value of this asset by approximately $400,000.00. Thus, several parties who are not direct appellants or appellees would be adversely affected by dismissing the Appeal. The success of the plan is not affected by the Appeal. In fact, the underlying principle of the plan is to maximize the estate for the benefit of the debtor's creditors. Thus, a dismissal of the Appeal would only work an injustice to such creditors.

## CONCLUSION

The creditors would obviously benefit from a substantially higher price and a sale that provides significant value to them. Rivco is not a wasting asset. Because the Appellant and the other creditors in this case would suffer great hardship if the Appeal is dismissed, and the estate would suffer little, if any, hardship if the Appeal is granted, this Court should deny Appellee's Motion.

**WHEREFORE**, the Movant respectfully requests, for the reasons set forth herein, that this Court enter an Order DENYING Appellee's Motion to Dismiss the Appeal as Moot.

Respectfully submitted,

HARVEY, PENNINGTON LTD.

Dated:  December 30, 2005          By:     /s/ *James E. Huggett*
        Wilmington, Delaware                James E. Huggett (# 3956)
                                            "J" Jackson Shrum (#4757)
                                            913 N. Market Street, 7th Floor
                                            Wilmington, Delaware 19801
                                            Phone: 302-428-0719
                                            Fax:    302-428-0734
                                            Jhuggett@harvpenn.com
                                            Jshrum@harvpenn.com

                                            *Counsel to A.M. Richardson, P.C.*